IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERIC JAMES LOSTUTTER,            )
                                  )
              Plaintiff,          )
                                  )
v.                                )            1:16-cv-1098
                                  )
THOMAS OLSEN; ALEXANDRIA          )
GODDARD; and MICHELLE MCKEE,      )
                                  )
              Defendants.         )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Deric James Lostutter, proceeding pro se, claims that Defendants, all residents of different States, defamed him, principally through their use of the unauthorized eponymous website www.DericLostutter.org. In this court, the parties have engaged in a nearly non-stop campaign of motions and filings, of which the following require resolution: Defendants' motion to dismiss and motion for gatekeeper order (Doc. 13); Lostutter's motion for preliminary injunction or temporary restraining order (Doc. 16); Defendants' motion to strike several of Lostutter's "notices of filing" (Doc. 26); Lostutter's motion to strike Defendants' motion to dismiss (Doc. 29); Lostutter's motion for extension of time to serve Defendant Alexandria Goddard (Doc. 32); Lostutter's motion for contempt or in the alternative for the issuance of a warrant for arrest (Doc. 35); Defendant Michelle

McKee's motion for attorneys' fees (Doc. 48); and Defendants' counsel's motion to withdraw (Doc. 50).

Lostutter has recently voluntarily dismissed the action against Defendant McKee (Doc. 45), so the motions are moot as to her. For the reasons that follow, the court finds that Defendant Thomas Olsen has not been properly served with process, and the action will be dismissed without prejudice as to him. As to the remaining action against Defendant Goddard, the court grants her motion to dismiss for failure to state a claim as to all of Lostutter's claims except those for libel per se and libel per quod. The remainder of the parties' motions will be denied.

## I.  BACKGROUND

The allegations of the complaint are difficult to follow and presume knowledge of events it does not fully describe. As best as can be ascertained and viewed in the light most favorable to Lostutter, the complaint alleges the following:

Lostutter styles himself as a women's rights advocate who, through his cyber-technology skills, exposes wrongdoing. Among his actions was the use of his computer skills to unearth technical information related to the prosecution of two high school football players accused of raping a 16-year-old in Steubenville, Ohio, and school administrators who covered it up. His activities were featured in the media, most notably in Rolling Stone Magazine and on CNN. (Doc. 1 ¶ 10.) As a consequence of his covert computer

actions, he was charged with felony crimes and was ultimately convicted and sentenced to federal prison, where he presently resides. When not in prison, Lostutter resides in Forsyth County, North Carolina. (Id. ¶ 4.)

Lostutter claims that Defendants, who reside in various States, have engaged in a scheme to defame him. Defendant Olsen is a resident of Escambia County, Florida, and a member of the internet "hacking activist group, 'Anonymous.'" (Id. ¶ 5.) Defendant Goddard is a resident of Franklin County, Ohio, and is an online blogger and the founder of Xander Business Group. (Id. ¶ 6.) McKee, whom Lostutter recently dismissed from the action, is a resident of Pierce County, Washington. (Id. ¶ 7.)

Defendants' alleged defamation campaign traces its start to April 2015, when Olsen created a website entitled DericLostutter.org in an effort to post negative information about Lostutter and to confuse the public over Lostutter's actual website, DericLostutter.com. According to Lostutter, Olsen has resisted his request and efforts to remove the site. Defendants have used DericLostutter.org to upload "pornographic content" relating to Lostutter for the purpose of harassing, degrading, and embarrassing him. (Id. ¶ 14.)

On May 9, 2016, Defendants "hatched a plot to falsely label the Plaintiff threatening, including false threats of rape and violence . . . using what appears to be Facebook Message generators

to imitate Plaintiff['s] Facebook page, typing ridiculous threats, encouraging the readers of the blog to send the fabrications to Plaintiff's local police department and the F.B.I. in an attempt to have Plaintiff arrested and damage the Plaintiff's good name." (Id. ¶ 15.)  An article about Lostutter was linked to the webpage as "deric-threatens-to-rape-and-film-stab-a-girl-threatens-her-kid." (Id.)  Defendants also "targeted" Lostutter's Kernersville, North Carolina business, known as TechAssist, resulting in a "catastrophic loss of clientele and forcing Plaintiff to close the doors." (Id. ¶ 16.)  (It appears that Lostutter's business was a brick-and-mortar store located in Kernersville, North Carolina. (Doc. 1 ¶ 16.))  Defendants posted false accusations that Lostutter kept clients' electronic devices he was servicing.  (Id. ¶ 17.) Lostutter claims a "projected" loss of "$80,000 in revenue for the fiscal year of 2016." (Id. ¶ 18.)

On December 15, 2015, Defendants engaged in a campaign to label Lostutter a "rapist." (Id. ¶ 21.)  They posted an article on the DericLostutter.org website located at http://DericLostutter.org/blog/2015/12/15/when-the-kitchen-gets-hot-just-make-rape-threats/, which allegedly details a false account of Lostutter sexually assaulting a former girlfriend. (Id. ¶ 21.)

After Defendants accused Lostutter of seeking to profit from the stillborn death of his daughter in January 2016, Lostutter

sought and obtained ex parte protection orders from a North Carolina State court against Defendants Olsen and McKee. (Id. ¶¶ 22-24.) Thereafter, McKee allegedly provided false information about Lostutter (including allegations of "grifting"[1]) to the local district attorney in Forsyth County, North Carolina, in connection with Lostutter's proceedings against her. (Id. ¶¶ 30-31.)

Without offering supporting factual explanation, the complaint alleges that Defendants have charged that "Plaintiff is a scam artist" and is "ripping people off and embezzling donations." (Id. ¶ 35.) Defendants Goddard and McKee have also allegedly "repeatedly faxed/emailed/mailed multiple authorities and solicited help of other people to maliciously prosecute the Plaintiff." (Id. ¶¶ 42, 43.) Defendant Olsen has allegedly threatened violence against Lostutter, and all three Defendants have "repeatedly retaliated against Plaintiff." (Id. ¶ 45.) Defendant Goddard has "sexually harassed" Lostutter on Twitter. (Id. ¶ 46.)

Lostutter brings six claims in his complaint: negligence per se – cyber stalking-harassment (count 1); negligence per se – cyber stalking – false statement (count 2); cyber stalking – false statement – threatening language (count 3); false designation of

---

[1] "Grifting" is obtaining money through "petty or small-scale swindling." Old English Oxford Dictionary, https://en.oxforddictionaries.com/definition/grift.

5

origin in violation of North Carolina law, citing "U.S.C. § 1125" (count 4); libel per se (count 5); and libel per quod (count 6). Lostutter seeks $1 million in damages, which includes "future damages," payment of "reputation management services" to restore his reputation, the removal of all disparaging content from the internet involving him, and various injunctive relief. In addition, Lostutter has moved for a temporary restraining order and/or preliminary injunction. (Doc. 16.)

Defendants move to dismiss on several grounds, but since Lostutter has dismissed Defendant McKee, the allegations as to only Defendants Olsen and Goddard remain. These Defendants argue that dismissal is warranted for lack of subject matter jurisdiction as to the amount in controversy; lack of personal jurisdiction (both general and specific) over them; improper service; and failure to state a claim upon which relief can be granted. They also seek entry of a "gatekeeper" order to prevent further lawsuits by Lostutter. (Doc. 13.) Lostutter has filed a response but addresses only the personal jurisdiction and service of process issues, and he opposes the entry of a gatekeeping order. (Docs. 18, 19.)

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Defendants argue that Lostutter has not met the amount-in-controversy requirement for diversity jurisdiction and thus that

this court lacks subject matter jurisdiction over the action. (Doc. 14 at 10-11.)  Because subject matter jurisdiction serves as a limitation on the court's power, the court addresses that argument first.  ESAB Grp., Inc. v. Arrowood Indem. Co., No. 4:09-CV-1701-JMC-TER, 2011 WL 13176143, at *3 (D.S.C. Feb. 23, 2011) ("Because ESAB challenges this Court's subject-matter jurisdiction, the Court must address that issue prior to reaching ZIP's personal jurisdiction and forum non conveniens arguments."); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (citing Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884))).

The party seeking to invoke the court's jurisdiction bears the burden of establishing the court's subject matter jurisdiction.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).  For diversity jurisdiction, the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  Courts apply the "legal certainty" test in determining whether the amount in controversy requirement is met.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).  "[T]he court should look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required

amount." Shanaghan v. Cahill, 58 F.3d 106, 112 (4th Cir. 1995).

"Unless the claim for an amount over the jurisdictional
prerequisite is made in bad faith, or unless it is plain from the
complaint that an amount less than the jurisdictional amount is
all that is at issue, the district court has jurisdiction over the
case." Id.; Lunsford v. Cemex, Inc., 733 F. Supp. 2d 652, 657
(M.D.N.C. 2010) ("The amount claimed in the complaint controls
when assessing the amount in controversy, unless it appears to a
legal certainty on the face of the complaint that the claim is for
less than the jurisdictional amount."). "[T]he legal
impossibility of recovery must be so certain as virtually to
negative the plaintiff's good faith in asserting the claim. If
the right of recovery is uncertain, the doubt should be resolved,
for jurisdictional purposes, in favor of the subjective good faith
of the plaintiff." McDonald v. Patton, 240 F.2d 424, 426 (4th
Cir. 1957). In determining whether the threshold amount is met,
a plaintiff may aggregate separate claims for damages as long as
they are not actually one claim with separate legal theories of
recovery. Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995).

Here, Lostutter's verified complaint alleges $1,000,000 in
damages, based in part on a "projected [loss of] $80,000 in revenue
[to Opsec CyberSecurity Solutions, LLC d/b/a TechAssist] for the

fiscal year 2016,"[2] as well as damage to his reputation from false claims of rape and sexual assault. (Doc. 1 ¶ 18.) Although Defendants do not argue it,[3] the complaint alleges the business is a North Carolina limited liability company. (Doc. 1 ¶ 4.) Under North Carolina law, a limited liability company is a separate entity from its owners. N.C. Gen. Stat. § 57D-2-01(a). The complaint further alleges it is Lostutter's business. (Doc. 1 ¶ 16 ("his DBA"); id. ¶ 17 ("Plaintiff's business").) Thus, it is unclear how much of the business's revenue is attributable to Lostutter as his loss, as opposed to that of his business (which is not named as a plaintiff).

In any event, Defendants offer no authority to suggest that Lostutter's reputational loss is insufficient to a legal certainty. Between the reputational loss alleged and whatever loss Lostutter derives from his business, he has facially alleged an adequate jurisdictional amount which Defendants have not demonstrated fails to reach the threshold to a legal certainty. Should Defendants determine otherwise, they may renew their argument. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 574 (2004) (noting that the court's subject matter jurisdiction at

---

[2] Lostutter also alleges that his business is suffering "an immediate loss of $4,000 per month." (Id.) The term of the "fiscal year" is not specified.

[3] Defendants do argue that Lostutter has failed to plead any other information relating to the "profit, ownership, or potential future of his business." (Doc. 14 at 11.)

the time of the filing of the complaint is always subject to later attack).

Defendants' motion to dismiss for lack of subject matter jurisdiction is therefore denied at this time.

**B.  Service of Process**

Defendants Olsen and Goddard maintain they have not been properly served with process and move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5).  Lostutter contends he has submitted evidence of proper service as to both.

Service of process is governed by Federal Rule of Civil Procedure 4(e)(1), which provides in part that an individual can be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  North Carolina Rule of Civil Procedure 4(j)(1)(d) in turn provides in relevant part that a natural person can be served "[b]y depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt."  The burden of proving service under Rule 4 rests with the plaintiff.  O'Meara v. Waters, 464 F. Supp. 2d 474, 476 (D. Md. 2006).  While mere technicalities ordinarily should not stand in the way of finding proper service and courts will liberally construe the rules when actual notice occurs, "the rules

'are there to be followed, and plain requirements may not be ignored.'" <u>Garvey v. Seterus, Inc.</u>, No. 5:16CV00209-RLV, 2017 WL 2722307, at *5 (W.D.N.C. June 23, 2017) (citations omitted).

As to Olsen, Lostutter has filed an affidavit of service claiming to have served him through United Parcel Service ("UPS"), with signature confirmation. Olsen argues that Lostutter's affidavit fails to list the address where the summons and complaint were delivered or where, when, or by whom they were received. (Doc. 14 at 13.) Attached to Lostutter's affidavit is a receipt from UPS, which clearly shows a delivery address of 348 West Herman Street in Pensacola, Florida, as well as a delivery time and date. (Doc. 18 at 7-8.) While the shipment receipt purports to require "signature confirmation," and the UPS "Proof of Delivery" receipt shows that signature was "required," the receipt shows only that delivery was "Left At: Reception" at 10:04 a.m. (Doc. 6 at 5.) This fails to comply with North Carolina's Rule 4, which requires that the summons and complaint be "deliver[ed] to the addressee." N.C. R. Civ. P. 4(j)(1)(d). Moreover, there is no evidence that anyone at reception signed for the delivery and, if so, who they were and whether they were authorized to accept service on behalf of Olsen. <u>Cf.</u> <u>Baker v. Joseph</u>, 938 F. Supp. 2d 1265, 1268-69 (S.D. Fla. 2013) (service of process held insufficient under New York law where plaintiffs affixed process on defendant's residence door and later claimed, without proof, to have attempted service on

adult male at defendant's residence); <u>Williams v. Hetzel</u>, No. 12-CV-23300-UU, 2012 WL 2577042, at *1 (W.D.N.C. July 3, 2012) (finding defendant named in individual capacity not properly served where process was sent via certified mail to defendant's office, but was not signed for by defendant).

Service also appears to be defective under Florida law. Florida permits service "by delivering a copy of [the summons] to the person to be served with a copy of the complaint, petition, or initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. § 48.031(1)(a); <u>Thomas v. Derryberry</u>, No. 8:16-CV-3482-T-33AEP, 2017 WL 2448177, at *2-3 (M.D. Fla. June 6, 2017) (quashing service). There is no evidence this was done, and leaving a copy with the receptionist is insufficient. <u>Schupak v. Sutton Hill Assocs.</u>, 710 So. 2d 707, 708-09 (Fla. App. 1998) (holding that service on doorman at residence fails to comply with Fla Stat. § 48.031(1)). Finally, there is no evidence that Lostutter complied with any of the provisions of Federal Rule of Civil Procedure 4(e)(2), which provides alternate means of service by way of personal service, leaving a copy with a someone at the defendant's personal abode, or delivering a copy to an authorized agent for service of process.

Thus, contrary to Lostutter's argument that Olsen was

properly served at his home (Doc. 18 at 3), there is no evidence
that Olsen in fact was properly served with process. For these
reasons, service of process is insufficient as to Defendant Olsen.
Because this defect is capable of being cured, the motion to
dismiss as to him will be granted without prejudice.

As to Defendant Goddard, Lostutter does not dispute that she
was not served properly within the initial 90 days of issuance of
the summons on September 2, 2016. (See Doc. 18 at 2-3.) However,
on November 29, 2016, Lostutter timely moved for an extension of
time to serve her under Rule 4(m) (Doc. 32) and contends he in
fact personally served her by sheriff on December 9, 2016, at her
home in Dublin, Ohio (Doc. 39). Goddard does not dispute this
later service.

Personal service by sheriff is permitted under North Carolina
law, N.C. R. Civ. P. 4(a) (who may serve), as well as under federal
law, Fed. R. Civ. P. 4(j)(1)(a)(personal service) & 4(e)(2)
(permitting personal service). Moreover, although no party has
addressed the point, Ohio law appears to permit service on an
individual by sheriff as well. Ohio R. Civ. P. 4.1 (B) & (C);
Rhodes v. Valley Greyhound Lines, 98 Ohio App. 187, 190, 128 N.E.2d
824, 827 (1954) (upholding personal service by sheriff).

Here, Lostutter filed an affidavit from a deputy sheriff in
Franklin County, Ohio, stating that he received the summons and
complaint on November 15, 2016, and personally served the documents

on Goddard at her residence on December 9, 2016, at 12:08 p.m. (Doc. 39.) Thus, service appears to be proper, and the only issue is whether service is effective when a plaintiff timely seeks an extension of time to serve under Rule 4(m) and serves a defendant within that additional time but before the court acts on the motion for extension.

Rule 4(m) provides that if a plaintiff does not serve a defendant within 90 days after the complaint is filed, the court

> on motion – or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

While Rule 4(m) does not define "good cause,"[4] it is generally regarded to mean "reasonable and diligent efforts . . . to effect service prior to the" deadline. <u>Chen v. Mayor & City Council of Baltimore</u>, 292 F.R.D. 288, 293 (D. Md. 2013) (citation omitted).

---

[4] After <u>Henderson v. United States</u>, 517 U.S. 654, 662 (1996) (citing the Advisory Committee's Notes on the 1993 Amendments to Rule 4 when noting that district courts may enlarge time "even if there is no good cause shown"), and subsequent revisions to Rule 4(m), the Fourth Circuit's decision in <u>Mendez v. Elliot</u>, 45 F.3d 75 (4th Cir. 1995) (holding that a district court lacks discretion to enlarge time absent a showing of good cause), no longer appears binding. <u>See, e.g.</u>, <u>LHF Productions, Inc. v. Does</u>, Civil Action No. 3:16CV284, 2016 WL 7423094, at *6 (E.D. Va. Dec. 22, 2016) (finding that Rule 4(m) unambiguously permits an extension of time to serve process regardless of whether a plaintiff can show good cause). Because the court finds good cause here, it need not consider the court's authority to extend time without such a showing.

In an unpublished case,[5] the Fourth Circuit has recently articulated several factors to consider in assessing whether good cause has been shown. See Scott v. Md. State Dep't of Labor, 673 F. App'x 299, 305-06 (4th Cir. 2016) (listing the factors of whether delay was outside plaintiff's control, the defendant was evasive, the plaintiff acted diligently or made reasonable efforts, the plaintiff is pro se, the defendant will be prejudiced, the plaintiff asked for an extension of time under Rule 6(b)(1)(A)), petition for cert. filed, __ U.S.L.W. __ (June 23, 2017) (No. 16-1546). Courts have specifically found that failure to obtain service due to a defendant's evasion constitutes good cause. Ruiz Varela v. Sanchez Velez, 814 F.2d 821, 823 (1st Cir. 1987) (citing cases).

Here, Lostutter, who is proceeding pro se, timely moved for an extension (although not citing Rule 6(b)(1)(A)) and stated that while he tried to serve Goddard, she evaded his service attempts on three occasions and has a history of doing so in other litigation. (Doc. 32 at 1-2.) Lostutter has included evidence of his initial September 6, 2016 attempt to serve Goddard. (Doc. 6 at 8.) There is also evidence that Goddard was aware of Lostutter's action against her and thus had incentive to evade

---

[5] The Fourth Circuit does not ordinarily accord precedential value to its unpublished opinions but has noted that they "are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted).

service.  (Doc. 32 at 2 (noting that before service Goddard had posted the complaint on her website prinniefied.com and retained counsel).)  Her knowledge of the action also suggests she was not prejudiced by any delay.

These various factors weigh in favor of finding good cause. Yongo v. Nationwide Affinity Ins. Co. of Am., No. 5:07-CV-94-D, 2008 WL 516744, at *9 (E.D.N.C. Feb. 25, 2008) (finding good cause in light of plaintiff's diligent, repeated efforts to serve defendants, application for new summons less than a month after expiration of service deadline, and pro se status); Selman v. Am. Sports Underwriters, Inc., 697 F. Supp. 225, 235 (W.D. Va. 1988) (denying motion to dismiss for insufficient service of process; good cause found where defendants received actual notice of action, plaintiff had been diligent and given reasonable effort by making multiple attempts at service, and had a good faith belief that service was accomplished).

Thus, the court will grant the motion for extension of time (Doc. 32) and deny the motion to dismiss for insufficient service of process as to Defendant Goddard.[6]

## C.    Personal Jurisdiction

Defendants next argue that the court lacks personal

---

[6] Lostutter's motion to strike Defendants' motion to dismiss (Doc. 29) is denied as moot and because it is an improper procedural device to oppose a motion to dismiss.

jurisdiction over them.  Given the court's dismissal of Olsen, this contention pertains to Goddard as the only Defendant who has been properly served.

Defendants argue that this court cannot exercise "general jurisdiction" over them because they have no ties whatsoever to the State of North Carolina, and that it cannot exercise "specific jurisdiction" over them because none of the alleged wrongdoing was directed to the State of North Carolina.  Rather, they contend, Defendants carried out their actions via an internet webpage that is available everywhere.  Lostutter responds that Defendants purposefully directed online content into the State and used the DericLostutter.org website in a fashion that intentionally optimized keyword search engines for his name, his business, and the city of Winston-Salem, North Carolina.  (Doc. 18 at 2.)

Lostutter bears the burden of establishing personal jurisdiction by a preponderance of the evidence.  See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction."  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).  "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable

inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); accord Carefirst, 334 F.3d at 396. If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of an evidentiary hearing or, if a prima facie demonstration of personal jurisdiction has been made, it can proceed "as if it has personal jurisdiction over th[e] matter, although factual determinations to the contrary may be made at trial." Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 717 (E.D. Va. 2011) (citing 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed. 2011)). Nevertheless, either at trial or at a pretrial evidentiary hearing, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); see also Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). To determine whether personal jurisdiction is proper, the court engages in a two-part inquiry:

first, North Carolina's long-arm statute must provide a statutory basis for the assertion of personal jurisdiction; and, second, the exercise of personal jurisdiction must comply with due process. See Carefirst, 334 F.3d at 396; Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011). In Christian Science Board of Directors of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209 (4th Cir. 2001), the Fourth Circuit held that N.C. Gen. Stat. § 1-75.4(1)(d) runs coextensively with the Due Process Clause, thereby collapsing the two-step process "into a single inquiry" as to whether the non-resident defendant has such "minimal contacts" with North Carolina that exercising jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." 259 F.3d at 215 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Universal Leather, 773 F.3d at 558-59 (confirming that the issue of specific jurisdiction under N.C. Gen. Stat. § 1-75.4(1)(d) "merges" the two-prong test "into the single question" of whether a defendant has "sufficient contacts with North Carolina to satisfy constitutional due process").

Under the Due Process Clause, personal jurisdiction over a defendant may be either general or specific. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). General personal jurisdiction requires "continuous and systemic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A.

v. Hall, 466 U.S. 408, 414-16 (1984).  Specific personal jurisdiction over a defendant can be exercised where the defendant has "purposefully established minimum contacts in the forum State" such "that [it] should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted).

Lostutter fails to identify the basis on which this court may exercise jurisdiction over Goddard.  Instead, he contends that "Defendants, through DericLostutter.org and its content, use[d] [Lostutter's] business, name, and terms such as Winston-Salem, North Carolina as keywords for search engine optimization." (Doc. 18 at 1.)  He reasons that Defendants purposely directed online content to North Carolina, giving this court jurisdiction.  (Id. at 2.)  He does not claim that Goddard had any regular and systemic contact with the State of North Carolina to make the exercise of general jurisdiction constitutional.  She is not from North Carolina, and there is no evidence in the record to support the exercise of general jurisdiction.

Instead, Lostutter appears to be advancing an argument for specific jurisdiction, and the court will analyze the motion accordingly.  Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188-89 (4th Cir. 2016) (declining to review whether court had general personal jurisdiction over defendant when plaintiff only claimed

that district court had specific personal jurisdiction over defendant).

Specific jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009). A court may exercise specific jurisdiction when the cause of action "arises out of the defendant's contacts with the forum." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005). Whether jurisdiction is appropriate depends on the facts and circumstances of each case. See Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (holding that the specific jurisdiction inquiry necessitates a study of the connections between the defendant and the forum and litigation). Exercise of specific jurisdiction requires consideration of three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301-02 (4th Cir. 2012) (per curiam); see also Universal Leather, 773 F.3d at 559. Each prong must be satisfied. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278-79 (4th Cir. 2009). When specific jurisdiction is

asserted, jurisdiction must be established for each claim alleged. N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc., 386 F. Supp. 2d 648, 656 (M.D.N.C. 2005). A court may, however, exercise "pendent personal jurisdiction" over any claim that arises out of a common nucleus of operative facts as the claim over which the court has personal jurisdiction. N.C. Mut. Life Ins. Co., 386 F. Supp. 2d at 656.

The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475 (internal quotation marks omitted). Rather, a defendant's conduct and connection to the forum must be "such that [it] should reasonably anticipate being haled into court there." Universal Leather, 773 F.3d at 559 (quoting Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989)). If a defendant has created a "substantial connection" to the forum, then it has purposefully availed itself of the privilege of conducting business there. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000); ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (holding that "contacts related to the cause of action must create a 'substantial connection' with the forum state, although this connection need not be as extensive as is necessary for general jurisdiction" (citation omitted)). The connection to the forum

"must arise out of contacts that the defendant himself creates with the forum State." Walden, 134 S. Ct. at 1122 (quoting Burger King, 471 U.S. at 475) (emphasis in original) (internal quotation marks omitted).

In ALS Scan, the Fourth Circuit addressed "when electronic contacts with a State are sufficient" to exercise personal jurisdiction over a defendant. 293 F.3d at 713. The court cited to the model established in Zippo Manufacturing Company v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). ALS Scan, 293 F.3d at 714. The Zippo model created a "sliding scale" for examining personal jurisdiction in the context of electronic contacts with a forum state:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. at 713-14 (quoting Zippo, 952 F. Supp. at 1124). Applying Zippo, the Fourth Circuit held that

a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

Id. at 714.

When applying that test to a case involving claims of trademark infringement, the Fourth Circuit in ALS Scan found that the alleged Internet activity was "at most[] passive" and that no personal jurisdiction existed because the defendant "did not select or knowingly transmit" the infringing material "specifically to" the forum State "with the intent of engaging in business or any other transaction" in the forum State. Id. at 714-15.

The Fourth Circuit decisions have applied ALS Scan's three-prong test on at least two occasions. In Young v. New Haven Advocate, the Fourth Circuit found that a district court lacked specific jurisdiction over a Virginia libel suit against two Connecticut newspapers. 315 F.3d 256, 261-64 (4th Cir. 2002). The newspapers in question had posted on their websites an article about a Virginia prison that discussed allegedly harsh conditions there, including cruelty by prison guards. Id. at 259. The warden claimed that the articles implied that he was a racist who encouraged prisoner abuse. Id. Examining the website in question,

the Fourth Circuit concluded that "neither newspaper's website contain[ed] advertisements aimed at a Virginia audience" and that the newspapers posted their articles with an intent to target a Connecticut — not Virginia — audience.  Id. at 263-64.  As a result, the Fourth Circuit held, "[T]he newspapers do not have sufficient Internet contacts with Virginia to permit the district court to exercise specific jurisdiction over them."  Id. at 264.

The second case — Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc. — was a trademark infringement case. There, a Maryland corporation had sued an Illinois corporation in Maryland because of alleged trademark infringement on the Illinois corporation's website.  334 F.3d at 393-95.  The Fourth Circuit examined whether the Illinois corporation, through its website, "expressly aimed its trademark-infringing conduct at the forum state" and determined that the corporation had not done so.  Id. at 398, 401.  In reaching its conclusion, the Fourth Circuit found persuasive that the website was only "semi-interactive," containing "features that make it possible for a user to exchange information with the host computer," with little "concrete evidence" of exchanges between Maryland residents and the Illinois corporation and that the content on the website had "a strongly local character" and was aimed at an Illinois audience.  Id. at 400-01; accord Rao v. Era Alaska Airlines, 22 F. Supp. 3d 529, 539 (D. Md. 2014) ("These cases demonstrate that the Fourth Circuit

has been notably reluctant to extend personal jurisdiction to out-of-state defendants based on little more than their presence on the Internet.").

Applying the ALS Scan test to the present case, the court concludes Lostutter has made a prima facie showing of this court's personal jurisdiction over Goddard. There is evidence of the first and third factors: Lostutter alleges that Goddard directed electronic activity into North Carolina by posting defamatory material on a website accessible in North Carolina; and the postings created for Lostutter, a North Carolina resident, potential causes of action for libel and alleged cyber-stalking and false use of Lostutter's name arising out of that same conduct. ALS Scan, 293 F.3d at 714.

As to the second factor, there is a prima facie showing to support Lostutter's allegation that Goddard had a "manifested intent of engaging in business or other interactions" in North Carolina. ALS Scan, 293 F.3d at 714. It does not appear that Goddard intended to engage in business in North Carolina herself, but several of the posts in question, some of which Goddard allegedly made personally under the name "p33p," evince an intent to discourage Lostutter's customers from doing business with him, referring to his business by name and location. (E.g., Doc. 20-15 at 16-17 ("TechAssist PC and Cell Phone Repair – Kernersville NC Deric Lostutter Accused of Ripping of [sic] the Elderly"); id.

26

at 7 ("TechAssist Closes Shop & Keeps Customer's Phone"); id. at 11 ("ANOTHER Disgruntled Customer at TechAssistPC and Cell Phone Repair - Kernersville NC"); id. at 21 ("Another Client Scammed by Deric"); id. at 24 ("Deric Scams Another Client" Say It Ain't So!"); id. at 30-35 ("KYAnonymous Scams Yet Another Client-Discussion").)  In part because Lostutter's business was a brick-and-mortar store located in Kernersville, North Carolina (Doc. 1 ¶ 16), Defendants' attempts to disrupt his business were likely aimed at North Carolina.  In this regard, the case is distinguishable from those where business is conducted only online and regularly attracts customers from other States.

Apart from his allegations regarding Defendants' interference with his business, Lostutter also alleges that Defendants encouraged online readers to contact North Carolina authorities to have him investigated.  For example, he alleges they urged online readers to contact law enforcement in Kernersville, North Carolina, in an attempt to have him arrested.  (Id. ¶ 15.)  And as part of the alleged coordinated effort, Olsen even allegedly published the contact information for various federal and North Carolina-based law enforcement and business regulators - such as the Federal Bureau of Investigation, the Northwest North Carolina Better Business Bureau, and the North Carolina Department of Public Safety - to contact about Lostutter's allegedly fraudulent business practices.  (Doc. 20-15 at 37.)

While ALS Scan's test controls, this case differs from its facts. In that case, the defendant was an Internet Service Provider and merely provided bandwidth for a company whose website contained photographs that were alleged to have infringed a trademark. 293 F.3d at 714-15. Here, Defendants, including Goddard, allegedly created the objectionable content and posted it online, targeting it to a North Carolina audience.

Similarly, this case is distinguishable from Young and Carefirst. The postings at issue here are at least two steps removed from the materials in Young and Carefirst: First, the articles are not aimed at a discreet audience outside North Carolina, whereas the articles in Young were written for Connecticut readers (where the forum state was Virginia), 315 F.3d 256, 263-64, and the website in Carefirst was aimed at Illinoisans (where the forum state was Maryland), 334 F.3d at 400-01. In other words, this case differs from those because the website's target audience was not contained to a locality outside North Carolina. Second, the articles in this case are directed at a particular group inside North Carolina. Of course, the audience for the website as a whole may have been nationwide and not specific to a particular State. But, as discussed above, much of the content was aimed toward a North Carolina store with North Carolina customers.

This case is instead similar to Calder v. Jones, in which the

Supreme Court held that a California court could assert jurisdiction over Florida defendants on the basis of a single, libelous newspaper article.  465 U.S. 783 (1984).  The Court reasoned that California served as the "focal point both of the story and of the harm suffered," with the material drawn from California sources and the defendants' actions expressly aimed at California audiences.  Id. at 789.  In addition, the defendants committed their actions intentionally, knowing that the brunt of the injury would be felt in California.  Id. at 789-90.  In this case, Lostutter alleges and has provided a prima facie showing that he was the target of the objectionable posts and that Defendants knew that their conduct would have effects on him and on his business in North Carolina.

The court therefore finds that Lostutter has made a prima facie showing of sufficient contacts between Goddard and North Carolina that she could have reasonably expected to be haled into a North Carolina court for her actions.  The motion to dismiss as to her will therefore be denied, yet Lostutter remains responsible for demonstrating personal jurisdiction by a preponderance of the evidence.

### D.   Failure to State a Claim

Defendants move to dismiss the complaint on the ground that it fails to state a claim on which relief can be granted, pursuant to Rule 12(b)(6).  Lostutter does not defend against this ground

for dismissal. He therefore has waived any right to contest Defendants' contention in this regard. See Landress v. Tier One Solar LLC, No. 1:15CV354, 2017 WL 1066648, at *2 n.7 (M.D.N.C. Mar. 21, 2017) (noting that where a party fails to develop an issue in its brief, courts have deemed the issue waived (citing Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012))). However, because even an unopposed motion to dismiss must be supported by the record, the court must satisfy itself that the complaint is barred. See Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014) (explaining that "[e]ven though [the plaintiffs] did not challenge the motions to dismiss, . . . the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper"); accord Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 449 (M.D.N.C. 2005) ("As with summary judgment motions, a court does not grant a motion for dismissal merely because it is uncontested. Rather, a district court should review a motion to dismiss on its merits to determine whether the pleadings are sufficient.").

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). This means a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This "does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim," however. Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citing McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996)). Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Counts I, II, and III of Lostutter's complaint allege negligence per se. To succeed on such a claim under North Carolina law, a plaintiff must show that the defendant violated a "public safety statute." Stein v. Asheville City Bd. Of Educ., 360 N.C.

321, 326, 626 S.E.2d 263, 266 (2006) (citing <u>Byers v. Standard</u> <u>Concrete Prods. Co.</u>, 268 N.C. 518, 521, 151 S.E.2d 38, 40 (1966)). To be a "public safety statute," a statute must "impose[] upon a person a specific duty for the protection of others." <u>Lutz Indus.</u> <u>v. Dixie Home Stores</u>, 242 N.C. 332, 341, 88 S.E.2d 333, 339 (1955). To recover on a negligence per se theory, a plaintiff must show that she "belongs to 'the class [of persons] intended to be protected by [the] statute,'" <u>Stein</u>, 360 N.C. at 326, 626 S.E.2d at 266 (quoting <u>Baldwin v. GTE S., Inc.</u>, 335 N.C. 544, 546, 439 S.E.2d 108, 109 (1994)), and that "the statutory violation is 'a proximate cause of [the plaintiff's] injury,'" <u>id.</u> (quoting <u>Hart</u> <u>v. Ivey</u>, 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992)) (alteration in original).

Here, Lostutter invokes North Carolina's cyberstalking statute, N.C. Gen. Stat. § 14-196.3(b)(1)-(3), as the basis for all three negligence per se claims. (Doc. 1 ¶¶ 47-67.)  The North Carolina Court of Appeals has held squarely that that statute provides no basis for a negligence per se claim. <u>Crowell v. Davis</u>, 226 N.C. App. 431, 741 S.E.2d 511, 2013 WL 1315853, at *6 (Apr. 2, 2013) (table) ("In his pleadings, Plaintiff attempted to allege various negligence per se claims, with each such claim predicated upon alleged violations of North Carolina's cyberstalking statute or its extortion statute.  Although Plaintiff describes these claims as sounding in negligence, he actually alleges in his

complaint that Defendants engaged in intentional conduct." (citations omitted)). <u>Crowell</u> is identical to this case in all relevant respects – in fact, it appears that Lostutter reproduced Crowell's pleadings verbatim. <u>Compare</u> <u>id.</u> ("Plaintiff explicitly alleges that Defendants willfully failed to comply with various statutory obligations and that they acted in this manner 'in order to harass, annoy and abuse' Plaintiff."), <u>with</u> Doc. 1 ¶ 50 ("Defendants willfully made these statements in order to harass, annoy and abuse the Plaintiff."), <u>id.</u> ¶ 57 (same), <u>and</u> <u>id.</u> ¶ 64 (same). As in <u>Crowell</u>, Lostutter "has alleged that Defendants acted in an intentional manner and that they intended the specific consequences which resulted from their actions." 2013 WL 1315853, at *6. He therefore "has failed to adequately allege any negligence-based claims," <u>id.</u>, and the motion to dismiss Counts I, II, and III will be granted.

Lostutter's fourth claim alleges that Defendants violated the federal Lanham Act because their "use of Plaintiff's name in commerce for the purpose of collecting funds is likely to cause confusion and deception as to the source and or association of Defendants' cause and service." (Doc. 1 ¶¶ 68-72 (citing 15 U.S.C. § 1125).) Relevant here, the Lanham Act creates a civil cause of action against a person who misuses some unregistered trademarks and trade names. The Lanham Act does not, however, protect an individual's name unless it has acquired a "secondary meaning,"

which is to say that the consuming public "understand[s] that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 125 (4th Cir. 1990). Lostutter does not plead facts that would raise an inference that his name has a secondary meaning. He does not allege that it has a commercial purpose or that "a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise," which he would have to prove at trial. Id. The motion to dismiss Count IV will therefore be granted.

Defendants also move to dismiss Lostutter's other two claims alleging libel per se and libel per quod on 12(b)(6) grounds. The sole basis for Defendants' motion is that Lostutter is a "public figure" for the purposes of a defamation claim. (Doc. 14 at 16-17.) A public figure must show "actual malice" to recover on a defamation claim, they argue, and Lostutter has not alleged that Defendants "knew their statements were false or acted in reckless disregard for the truth or falsity of their statements." (Doc. 14 at 17.)

The only argument Defendants offer in favor of the proposition that Lostutter is a public figure is that he "states he is 'well known' and has been featured in multiple publications including

CNN and Rolling Stone." (Doc. 14 at 17.) Defendants do not, however, identify which type of public figure they take Lostutter to be. See Gaunt v. Pittaway, 139 N.C. App. 778, 785, 534 S.E.2d 660, 664–65 (2000) (stating that there are three types of "public figures" for the purpose of a defamation claim: involuntary public figures, all-purpose public figures, and limited purpose public figures (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974))). Nor do they cite any legal authority for their argument that Lostutter is a public figure.

While the complaint indicates that Lostutter has had some media exposure for his activities, the court cannot determine on this record that he is a public figure. Defendants have provided insufficient analysis for the court to determine the issue as a matter of law, and "[t]he Court need not undertake that exercise itself." Finnegan v. Berryhill, No. 1:16CV1012, 2017 WL 2224332, at *7 (M.D.N.C. May 19, 2017) (citing inter alia Belk, Inc., 679 F.3d at 152 n.4); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (citation and internal quotation marks omitted)). The motion to dismiss Lostutter's libel claims will therefore be denied.

### E.   Motion for Sanctions

Defendant McKee moves the court for an award of attorney's

fees, contending that her dismissal from the action demonstrates that Lostutter lacked evidentiary and legal support for the claims made against her. (Doc. 48.) Though the September 2, 2016 complaint advanced a variety of State law claims alleging that the Defendants engaged in a scheme to harass and "cyberstalk" Lostutter through the use of the DericLostutter.org website, Lostutter voluntarily dismissed McKee on April 4, 2017, explaining that he concluded her involvement was "minimal at best." (Id. ¶ 6.) In defending the lawsuit until her dismissal, McKee had retained counsel and incurred legal expenses. She now seeks attorney's fees pursuant to Federal Rule of Civil Procedure 11 and N.C. Gen. Stat. § 6-21.5. (Doc. 48 ¶ 8.) Lostutter responds that he has never conceded that McKee lacked involvement in the alleged wrongful conduct, McKee agreed to absorb her counsel fees as part of the agreement to dismiss her, and he agrees Gibson should withdraw. (Doc. 51.)

Although McKee has been dismissed, the court retains jurisdiction to consider motions for sanctions. Courtney v. IKEA Holding US, Inc., No. 1:16CV1215, 2017 WL 2455100, at *4 (M.D.N.C. June 6, 2017) (considering defendants' motion for costs and attorneys' fees under Rule 11 after granting motion to dismiss); Bryson v. Sullivan, 330 N.C. 644, 412 S.E.2d 327 (1992) (finding that dismissal, whether with or without prejudice, does not deprive court of jurisdiction to determine the appropriateness of

attorney's fees pursuant to N.C. Rule Civ. P. 11 and N.C. Gen. Stat. § 6-21.5). On either legal basis, the burden rests with McKee, as the moving party. <u>United States v. Henry</u>, No. 2:07CV342, 2017 WL 1065820, at *1 (E.D. Va. Mar. 20, 2017) ("The party moving for Rule 11 sanctions has the burden of proving a violation of Rule 11; once that burden is met, it shifts to the responding party to prove that his or her conduct was reasonable."); <u>In re Cranor</u>, 786 S.E.2d 379, 390 (N.C. App. 2016) (party moving for sanctions pursuant to N.C. Gen. Stat. § 6-21.5 carries the burden of proof to support the motion).

The initial problem with McKee's motion, however, is that it lacks a supporting brief. Local Rule 7.3 requires that, except for a select group of motions not applicable here, every motion shall be accompanied by a brief of supporting authorities. The rule further warns that "[a] motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied." L.R. 7.3(k). Dismissal is more apt to occur where, as here, the motion provides no legal argument. For this reason, McKee's motion fails.

Even on the merits, however, the motion would be denied. Both Rule 11 and N.C. Gen. Stat. § 6-21.5 vest the court with discretion to sanction a party. Rule 11 requires a plaintiff to "conduct a reasonable investigation of the factual and legal basis for [her] claim before filing." <u>Brubaker v. City of Richmond</u>, 943 F.2d 1363,

1373 (4th Cir. 1991). To be reasonable, a plaintiff's investigation must have yielded "some [factual] information" and "some basis in law" to support the claims. Id. "[U]nartful pleading, such as through a vague and conclusory complaint, is irrelevant to the factual and legal inquiry required under Rule 11." Id. (citing Simpson v. Welch, 900 F.2d 33, 36 (4th Cir. 1990)). "[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." Id. (citing Davis v. Carl, 906 F.2d 533, 536 (11th Cir. 1990)) (alteration in original); see generally Dillard v. Thomasville Auto Sales, LLC, 221 F. Supp. 3d 677, 683–84 (M.D.N.C. 2016).

Similarly, under N.C. Gen. Stat. § 6-21.5, the court is authorized to award a prevailing party a reasonable attorney's fee "if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." The plaintiff must have reasonably been aware of this deficiency when the complaint was filed or must have persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue. Sunamerica Fin. Corp. v. Bonham, 328 N.C. 254, 258, 400 S.E.2d 435, 438 (1991); see also Bryson v. Sullivan, 330 N.C. 644, 664, 412 S.E.2d 327, 338 (1992) (dismissed parties are "prevailing parties" regardless of whether their dismissals were with or without prejudice).

Lostutter's voluntary dismissal of McKee alone does not establish the absence of a justiciable issue. Dismissals are granted for a variety of reasons. Lostutter's concession that McKee's involvement in the alleged wrongs was "minimal at best" does not equate to frivolousness. According to Lostutter, he concluded that McKee was exploited by Olsen and Goddard, because she was "under [the] direction and influence from her co-defendants and other third parties, was taken advantage of, and 'gaslighted' regarding the Plaintiff." (Doc. 45 at 2.) Lostutter maintains that McKee's co-Defendants took advantage of her, leading her to misplace her trust in the information they provided about him. (Id.) He does not expressly retract any claim that she engaged in the conduct alleged.

Moreover, the complaint alleges that McKee assisted her co-Defendants in harassing Lostutter through a "smear campaign." (Doc. 1 ¶ 16.) Lostutter accused McKee of assisting her co-Defendants in the harassment, not only by means of the website, but also through Twitter, and by writing a letter to North Carolina law enforcement officials accusing Lostutter of violating several laws. (Id. ¶¶ 25-31, 43, 45.) The complaint also details Olsen's admission that McKee was involved in cyberstalking. (Id. ¶ 12.)

As to the legal support for his claims, the court has found that Lostutter's "cyber-stalking" claims cannot survive dismissal, as they rely on criminal statutes that have no apparent private

39

right of action. But the absence of a private right of action, while supporting dismissal, does not inescapably render a claim frivolous. Cf. Williams v. Spencer, 883 F. Supp. 2d 165, 181–82 (D.D.C. 2012) (finding that the fact that the No Fear Act did not provide a private right of action did not render a civil claim based on it so frivolous as to deprive the court of subject matter jurisdiction). Moreover, the same conduct is alleged to support Lostutter's defamation claims, as to which the court has denied Defendant's motion to dismiss. Even weak claims – including those that would be dismissed for failure to state a claim - are not rendered so lacking in legal support as to be frivolous under Rule 11 or N.C. Gen. Stat. § 6-21.5.

Ultimately, the burden is on McKee to establish a right to sanctions. While McKee's conduct may have been "minimal at best," McKee's unsupported motion has not demonstrated that she is entitled to attorney's fees as a sanction under either Rule 11 or N.C. Gen. Stat. § 6-21.5. Her motion for sanctions will therefore be denied.[7]

### F. Motion to Withdraw

Next, R. Daniel Gibson moves to withdraw as attorney of record for all Defendants. (Doc. 50.) According to Gibson, while no conflict existed among the Defendants at the outset of his

---

[7] This denial is without prejudice to any Defendant filing any later motion for sanctions based on conduct not set forth in this motion.

representation of them, Olsen has since sued McKee in an unrelated matter, which has created "an unwaivable conflict" that requires his withdrawal. (Id. at 2.)  Gibson represents that all Defendants consent to the motion (id.), and no Defendant has filed any opposition.  Lostutter does not oppose the motion.  (Doc. 51 at 3.)  Because Lostutter has dismissed McKee and the court has dismissed the action as against Olsen, the motion is moot as to them and will be considered as to Goddard as the remaining Defendant.

Here, again, the motion lacks a supporting brief, in violation of the court's local rules.  L.R. 7.3(a).  Despite the motion's claim, it is not apparent that Olsen's separate lawsuit creates an actual conflict of interest.  The motion itself represents that the other litigation does not relate to the same transaction or occurrence as this matter.  (Doc. 50 at 2.)  North Carolina Rule of Profession Conduct 1.7 provides that an actual concurrent conflict exists where "the representation of one client will be directly adverse to another client" or "the representation of one of more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer."  None of those conditions is alleged here.

Another problem is that the motion to withdraw does not indicate any substitution of counsel.  While no Defendant has

indicated opposition to the motion, the court's Local Rule 83.1(e) requires that a motion to withdraw without substitution of new counsel be served on the clients and include the clients' mailing address in the certificate of service. Counsel must make this showing in order to have his motion considered.

The court is therefore compelled to deny the motion to withdraw without prejudice unless and until counsel complies with the requirements of Local Rules 7.3(a) and 83.1(e).

### G. Request for Gatekeeper Order

Claiming that the present action is frivolous and harassing, Defendants ask the court to invoke its powers under the All Writs Act, 28 U.S.C. § 1651, to enter a "gatekeeper" order preventing Lostutter from filing any further actions. (Doc. 13.) Defendants argue that Lostutter has filed eight other actions in North Carolina State court, including one substantially similar to the present case. They also note that Lostutter dismissed the similar State court action, after Defendants filed a motion to dismiss for lack of personal jurisdiction, only to refile it as the present action. Finally, Defendants point to Lostutter's untimely motion for summary judgment (Doc. 30), which he has since withdrawn (Doc. 44). Lostutter responds that he withdrew the similar State court action in order to revise his complaint, and he details the nature of the other various State court proceedings, many of which were criminal misdemeanor cases. (Doc. 19.)

Under the All Writs Act, district courts may restrict access to parties who repeatedly file frivolous litigation.  *In re Burnley*, 988 F.2d 1, 3-4 (4th Cir. 1992); *Abdul-Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir. 1990); *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.").  Pro se litigants, like Lostutter, enjoy no exception to these rules.  *See* *Mallon v. Padova*, 806 F. Supp. 1189 (E.D. Pa. 1992); *Armstrong v. Koury Corp.*, 16 F. Supp. 2d 616, 620 (M.D.N.C. 1998), *aff'd per curiam*, 168 F.3d 481, 1999 WL 11298 (4th Cir. Jan. 13, 1999) (unpublished table decision).

Such a remedy is a drastic one that is to be employed sparingly.  *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004).  Before a court can enter a pre-filing injunction, it must analyze all relevant circumstances, including: "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."  *Id.* at 818.  If such analysis reveals that an injunction is justified, it must be narrowly tailored to fit the specific circumstances at issue.  *Id.*

Here, Defendants have failed to demonstrate that they have met this high bar. Lostutter has a history of filing several actions, but they do not all involve these same Defendants. Only the complaint from one of the actions – the State court action that is similar to, and the precursor of, the present case – has been made a part of the record. The fact that it was dismissed voluntarily is not sufficient to demonstrate that it was filed, or refiled now, vexatiously. None of the cases appears to have been dismissed on grounds of res judicata or collateral estoppel. Moreover, Lostutter does allege that Defendants publicly accused him falsely of sexual assault and other wrongdoing. Whether his claims muster up is unclear on this record, but for now the court has denied Defendants' motion to dismiss the libel claims. Defendants have therefore not demonstrated on this record that Lostutter's previous filings render the present action vexatious and harassing and thus meet the high bar for a pre-filing injunction, and the motion for a pre-filing injunction will be denied without prejudice.

**H.   Motion to Strike**

Lostutter has filed several batches of documents in the record, but with no notation that they are intended to apply to any pending motion. (See Docs. 20, 22, 23, and 24.) Defendants have moved to strike these filings pursuant to Federal Rule of

Civil Procedure 12(f).  (Doc. 26.)  Lostutter has filed a response.
(Doc. 28.)

Federal Rule of Civil Procedure 12(f) authorizes the court to
"strike from a pleading an insufficient defense or any redundant,
immaterial, impertinent, or scandalous matter."  Such motions act
to prevent the litigation of "unnecessary issues."  Simaan, Inc.
v. BP Prods. N. Am., Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C.
2005).  A party moving to strike a defense under Rule 12(f) must
make a showing of prejudice.  Id.  "[T]o survive a motion to
strike, a defendant must offer more than a bare-bones conclusory
allegation which simply names a legal theory but does not indicate
how the theory is connected to the case at hand."  Villa v. Ally
Fin., Inc., No. 1:13CV953, 2014 WL 800450, at *2 (M.D.N.C. Feb.
28, 2014) (internal quotations and citations omitted).  Whether to
grant or deny a motion to strike is discretionary with the district
court.  Renaissance Greeting Cards, Inc. v. Dollar Tree Stores,
Inc., 227 Fed. App'x 239, 246 (4th Cir. 2007); Ferrellgas, L.P. v.
Best Choice Prod. a/k/a Sky Billiards, Inc., No. 1:16CV259, 2016
WL 4539220, at *2 (M.D.N.C. Aug. 30, 2016).

There is no basis for filing documents in the record for
general purposes; rather, a party may file them in connection with
a pending motion, where appropriate, and only according to the
rules of the court.  While Lostutter is proceeding pro se, he must
abide by the applicable Federal Rules of Civil Procedure and the

court's Local Rules available publicly on the court's website, www.ncmd.uscourts.gov. Because Rule 12(f) applies to pleadings (which these documents are not), and because the rules permit the court to consider all filings of a pro se litigant in assessing whether he has stated a claim, the court will not strike the filings at this stage. The court will only consider those portions of the filings referenced in this memorandum opinion for the limited purposes noted. Otherwise, the court will disregard the filings. With this explanation, the motion to strike (Doc. 26) is denied, but Lostutter is warned against making unauthorized filings in the docket.

### I. Motion for Contempt

Lostutter moves for an order finding Olsen in contempt of court or alternatively for arrest for an alleged violation of 18 U.S.C. § 1512. (Doc. 35.) Insofar as § 1512 is a criminal statute and the claim against Olsen has been dismissed, the motion is frivolous and will be denied. Lostutter is warned that even as a pro se litigant, he is bound by Federal Rule of Civil Procedure 11 and will be subject to sanctions for frivolous motions. The court can consider such sanctions on motion of any party or on its own in the absence of such a motion.

### J. Motion for Preliminary Injunction

Lostutter has filed a motion for a temporary restraining order and preliminary injunction. (Doc. 16.) The motion is predicated

on alleged violations of the North Carolina cyber-stalking law, N.C. Gen. Stat. § 14-196.3(b)(1)-(3) and the Lanham Act, 15 U.S.C. § 1125. The motion would only be applicable to the only remaining Defendant, Goddard. To succeed on this motion, Lostutter would have to demonstrate a likelihood of success on the merits. But his motion relies on claims that have been dismissed, so the motion must be denied. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (setting forth standards for preliminary injunctive relief).

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED as follows:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. 13) is DENIED.

2. Defendant Olsen's motion to dismiss based on insufficient service of process (Doc. 13) is GRANTED, and the action against him is DISMISSED WITHOUT PREJUDICE.

3. Lostutter's motion for extension of time to serve Defendant Goddard (Doc. 32) is GRANTED, Lostutter's motion to strike (Doc. 29) is DENIED AS MOOT, and Goddard's motion to dismiss based on insufficient service of process (Doc. 13) is DENIED.

4. Defendant Goddard's motion to dismiss based on lack of personal jurisdiction (Doc. 13) is DENIED at this time; Lostutter

remains responsible for demonstrating personal jurisdiction by a preponderance of the evidence.

5. Defendants' motion to dismiss for failure to state a claim on which relief can be granted, as it applies to the remaining Defendant Goddard, is GRANTED as to Counts I through IV and DENIED as to Counts V and VI for libel per se and libel per quod. Counts I, II, III and IV are DISMISSED WITH PREJUDICE.

6. Defendant McKee's motion for sanctions in the form of attorney's fees (Doc. 48) is DENIED.

7. Defendants' counsel's motion to withdraw as counsel (Doc. 50) is MOOT as to Defendants McKee and Olsen, who are dismissed, and is DENIED WITHOUT PREJUDICE as to Defendant Goddard, pending counsel's compliance with Local Rules 7.3(a) and 83.1(e).

8. Defendants' motion for a "gatekeeper" order (Doc. 13) is DENIED WITHOUT PREJUDICE.

9. Defendants' motion to strike (Doc. 26) is DENIED.

10. Lostutter's motion for contempt or arrest (Doc. 35) is DENIED as frivolous.

11. Any other motion or request for relief not specifically addressed herein is DENIED.

Lostutter is cautioned that, while he is proceeding pro se, he must comply with the Federal Rules of Civil Procedure and the court's Local Rules.

/s/   Thomas D. Schroeder
                                    United States District Judge
August 24, 2017